UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUAN SALAZAR, on Behalf of Himself and All Other Persons Similarly Situated<br><br>      Plaintiff,<br><br>   vs.<br><br>AMERICAN WATER RESOURCES, LLC,<br><br>      Defendant | Case No.:<br><br>   Civil Action<br><br>CLASS  ACTION  COMPLAINT AND JURY DEMAND |

Plaintiff Juan Salazar, by and through his undersigned counsel, individually and on behalf of all other similarly situated individuals (the "Class"), as defined below, alleges the following facts and claims upon personal knowledge and upon information and belief as to all other matters as follows:

## NATURE OF THE ACTION

1.   This class action complaint arises from the illegal, improper, and bad faith conduct of defendant America Water Resources, LLC ("AWR") in denying claims by its service contract customers for the repair to exterior water and sewer line backups and damages under the terms and conditions of AWR's water and sewer line protection program agreements (the "Agreements").

2.   Generally, a homeowner is responsible for the maintenance and repair of water and sewer lines on their property. However, most homeowners are unaware that backups or damage to these lines require substantial costs for repair.

1

3.  Given that risk, in January 2013, the New York Department of Environmental Protection ("NYCDEP") introduced the Water and Sewer line protection programs for NYCDEP customers and selected AWR as the exclusive service line protection provider for over 670,000 eligible New York City properties.

4.  AWR also offers similar protection programs throughout the United States, either directly selling programs to individual homeowners, or, like in New York, partnering with governmental agencies to offer such services as an add on to the resident's water and sewer bills.

5.  AWR claims that "[f]or over a decade, [it] has helped customers protect themselves against unexpected repair costs with affordable protection for service line emergencies[,]"and that it "strives to provide hassle-free repairs, exceptional customer service, professional local contractors, and peace of mind" to 1.9 million service contract customers across the country.

6.  Despite its claims that it is protecting consumers and helping them avoid the costs of service line repairs, AWR's line protection programs are deceptive and worthless.

7.  Even though AWR readily markets its programs throughout the country and accepts fees from its customers for the protection plan, AWR regularly and routinely denies coverage for claims that are within the scope of the sewer line program as stated in the Agreements.

8.    In rejecting otherwise covered claims, AWR enriches itself at its customers expenses, leaving its customers with the financial and logistical responsibilities of repairing the sewer line damage on their own, despite paying AWR for this service.

9.    Plaintiff, Juan Salazar, is one of many such AWR customers who sought AWR's assistance with a damaged sewer line and was wrongfully denied such coverage.

10.    Based on AWR's unlawful conduct, Plaintiff brings this action on behalf of himself and other similarly situated homeowners across the United States. Plaintiff alleges claims for (1) breach of contract; (2) a breach of the implied covenant and good faith and fair dealing; (3) violation of the New Jersey Consumer Fraud Act ("NJFCA"); and/or (4) New York General Business Law § 349 ("NYGBL § 349"). Plaintiff seeks permanent injunctive relief, as well as damages caused by AWR's practices.

<u>IDENTIFICATION OF PARTIES</u>

11.    Plaintiff, Juan Salazar, is a New York citizen who resides in Brooklyn, New York. Since on or about May 11, 2013, Plaintiff has been enrolled in AWR's service line protection program for sewer and water lines located outside his residential home.

12.    Defendant, American Water Resources, LLC, is a limited liability company organized under Virginia law, with its principal place of business located at 1025 Laurel Oak Road, Voorhees, New

Jersey 08043. Upon information and belief, Defendant's sole member is American Water Works Company, a publicly traded Delaware corporation, with its principal place of business located at 1025 Laurel Oak Road, Voorhees, New Jersey 08043.

13. Upon information and belief, AWR, through its management, employees, and agents, directs and manages the promotion and provision of Line Protection Agreements through its New Jersey headquarters.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because at least one class member is of diverse citizenship from the Defendant, a corporate incorporated in the State of Delaware, with its principal place of business in Vorhees, New Jersey; there are more than 100 members in the class. Minimal diversity exists between members of the class (defined below); and the amount in controversy in this action exceeds $5,000,000 exclusive of costs and interest.

15. This Court has personal jurisdiction over the parties because New Jersey is AWR's principal place of business. Alternatively, AWR is engaged in systematic and continuous business activity in New Jersey, has sufficient minimum contacts in New Jersey, or otherwise intentionally avails itself of the New Jersey consumer market, including through promoting, marketing,

4

and enrolling New Jersey homeowners in line protection programs from its New Jersey headquarters.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because although Salazar is a New York resident, his payments were made to AWR, a New Jersey business and a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this District, and AWR regularly conducts business and is subject to personal jurisdiction in this District.

17.    The Federal Courthouse located in Newark, New Jersey is the proper vicinage for this matter because AWR conducts business in both New Jersey, from its Vorhees headquarters and New York City, where Plaintiff resides and is thus economical for all parties.

FACTUAL BACKGROUND

A.    <u>The Line Protection Program</u>

18.    Most homeowners in America are responsible for the maintenance and repair of the water and sewer lines that run from their homes to the municipal services lines in the street.

19.    These lines can be damaged either within the confines of the residential home or in the residential lot by things such as aging pipes, tree roots, lawn care, renovations, or seasonal changes.

20.    However, most homeowners are unaware of their responsibilities regarding exterior water and sewer lines.

5

21. Further, the cost of repairing a broken service line can amount to thousands of dollars. On average, it costs homeowners between $3,000 and $5,000 to repair a water line break and between $10,000 and $15,000 to repair a sewer line break.

22. Yet, many homeowner insurance policies either do not cover such damages or only provide *de minimis* coverage.

23. Because of the financial risk associated with sewer and water line repairs, NYCDEP established the line protection programs in January 2013 and partnered with AWR to administer and provide services to participants pursuant to the terms and conditions of the Line Protection Agreements. Beginning in 2013, NYCDEP mailed letters to its customers describing the line protection programs and instructions for enrollment.

24. NYCDEP encouraged homeowners to enroll in the programs by citing AWR's supposed decade-long history as one of the country's leading water and sewer service line protection providers, servicing over one million sewer lines.

25. Due to its partnership with NYCDEP, AWR is the exclusive provider of exterior water and sewer line protection for approximately 670,000 eligible properties throughout New York City.

26. NYCDEP is not alone. AWR has partnered with regional utility companies to provide line protection to homeowners across the United States. For example, AWR is the exclusive line service

6

protection provider in Nashville, Tennessee; Houston, Texas; Burlington, Iowa; and Orlando, Florida.

27.  In addition, AWR also offers services and enters into Agreements directly with consumers in 43 states.

28.  In total, AWR provides line protection services to more than 1.9 million consumers across the country.

29.  Homeowners are promised many benefits if they enroll with AWR, including the following:

- Unlimited protection for covered water and sewer service line repairs.
- A network of reliable, NYC licensed master plumbers promptly dispatched to your property.
- Peace-of-mind protection from the Department of Environmental Protection's exclusive provider of Water and Sewer Service Line Protection Programs.

30.  In exchange for this "unlimited protection", AWR charges customers approximately $180.00 per year, which is added directly onto the customer's monthly water and sewer bills and pro-rated over the year.

31.  AWR provides only its marketing materials prior to the customer's signup. For example, NYCDEP instructed customers to enroll in the line protection programs by completing and returning an enclosed form, but because no copies of the Agreements were included with the materials, potential participants could have no way of determining the true extent of AWR's coverage or the particulars of AWR's exclusions.

B.    The AWR Agreements

32.    The scope of the AWR protection program is contained in its Agreements.

33.    Paragraph 4 of the standard agreement sets forth which homes are offered protection by AWR and states as follows:

**4. What Homes Are Protected?**
AWR will only service repairs under this Agreement if:
- You own Your Home; and
- You are responsible for maintaining Your Home's Sewer Line; and
- Your Home has a water line with a diameter of two inches or less; and
- Your Home consists of sixteen (16) or less units and is used for residential or mixed residential/commercial purposes; and
- Your Home is habitable.

34.    Pursuant to Paragraph 5 of the Agreement, AWR sets forth which lines its plan protects.

**5. What Lines Are Protected?**
Your sewer line is the sewer service lateral from the exterior wall of Your Home to the point where it connects to (i) the sewer main owned by the New York City Department of Environmental Protection (DEP); (ii) Your septic tank; (iii) a private sewer main or (iv) common/trunk line ("Sewer Line"). Your Sewer Line does **not** include: (a) a private sewer main; (b) common/trunk line; (c) the tap/saddle connected to Your Sewer Line; or (d) Your septic tank or its components or attachments.

35.    The Agreement also provides which repairs are and are not covered under the Agreement.

**6. What Repairs Are Covered?**
Subject to the terms and conditions of this Agreement, AWR will pay to repair breaks, clogs or blockages of Your Sewer Line if they: (i) occurred on or after the Effective Date; and (ii) resulted from normal wear and usage. Normal wear and usage includes sewer line channeling and tree root intrusion so long as such repair is otherwise covered by this Agreement.

8

## 7. What Repairs Are **Not** Covered?

AWR will **not** service or pay for any of the following:

- Repairing anything that occurred before the Effective Date.
- Repairing anything not resulting from normal wear and usage.
- Repairing anything caused by You or any third parties unless caused by normal wear and usage of Your Sewer Line.
- Repairing anything in any home that is not habitable.
- Repairing anything caused by natural acts or disasters, such as earthquakes, floods, hurricanes, landslides or sinkholes.
- Repairing anything caused by defective materials that have been the subject of a recall or class action litigation.
- Repairing any privately owned main or common/trunk lines that are connected to Your Sewer Line.
- Repairing anything caused by improper design or installation of Your Sewer Line (e.g., bellied or back-pitched Sewer Lines).
- Repairing any non-conforming drain line, such as a basement or storm drain system, attached to Your Sewer Line.
- Repairing any bellied Sewer Lines.
- Repairing any clog or blockage caused by the lack of proper pitch or gravitational flow in the Sewer Line (otherwise known as a back-pitched sewer line).
- Repairing any Sewer Line with a previous illegal repair, including a Sewer Line installed in violation of applicable New York City code, law or ordinance.
- Repairing any Sewer Line improperly or illegally connected to the sanitary sewer system.
- Repairing any septic tank or its components or attachments, such as a pump or grinder.
- Repairing any devices connected to Your Sewer Line, such as lift stations or pumps.
- Repairing any section of Your Sewer Line located inside Your Home.
- Repairing any Sewer Line that is required to be repaired as a result of any local, state or federal

law, rule, regulation, order or other similar governmental requirement, unless such repair is otherwise covered by this Agreement.

Repairing any openings made in walls, ceilings or surfaces inside Your Home for AWR's independent contractor to access Your Sewer Line.

Repairing any third party's sewer line that is attached to Your Sewer Line.

Restoring any gardens, shrubs, trees or structures.

Restoring any sidewalks, curbs, driveways, roads or other paved surfaces that are not required by permit or New York City Department of Transportation rules and regulations to be repaired or restored, provided that, private walkways and private driveways will be patched in accordance with Section 9 of this Agreement.

Relocating any section of Your Sewer Line, unless necessary to complete a repair.

Updating any non-broken or non-blocked Sewer Line to meet code, law or ordinance requirements.

Removing any items necessary to access Your Sewer Line, such as trees, debris, trash, rocks, cars, steps or structures.

Remediating or cleaning any hazardous substance or pollutant, such as mold or asbestos.

Thawing any frozen section of Your Sewer Line.

Excavating Your Home's foundation or slab in order to access any section of Your Sewer Line.

Repairing, replacing or cleaning any portion of Your Home or its contents that are damaged by breaks, clogs or blockages to Your Sewer Line.

Paying any costs caused by a break, clog or blockage of Your Sewer Line, such as relocation costs, storage costs or temporary housing costs.

Paying any damages caused by a break, clog or blockage to Your Sewer Line, such as lost time, lost use of Your Home or its contents or any damages due to any special circumstances or conditions.

36. To report an issue with water and sewer lines, Line Protection Plan participants are told to phone AWR' s toll-free line or to contact their regional utility company. AWR will then dispatch a contractor who will begin work on the damaged water or sewer line after obtaining any necessary permits.

10

37.   The Line Protection Agreements sometimes cap coverage per occurrence, but in other instances there is no coverage limit:

**8. What Is Your Protection Limit?**
There is no limit on the amount that AWR will pay to service covered repairs under this Agreement.

38.   To evade insurance regulations and oversight by state insurance regulators, the Line Protection Agreements avoid using the word "insurance" and, in some instances, expressly state that the Line Protection Agreements are not insurance contracts.

C.   **Plaintiff Purchased AWR's Protection Program But AWR Refuses To Honor Its Agreement**

39.   Plaintiff has been a paying AWR customer since May 11, 2013. His contract number with AWR is 0000239302001.

40.   On April 11, 2023, Plaintiff's spouse discovered a sewage backup issue in Plaintiff's basement.

41.   On May 11, 2023, Plaintiff's AWR Agreement automatically renewed for an additional year term under the same or similar terms and conditions as set forth in each yearly renewal since Plaintiff's initial purchase of the Protection Program.

42.   Plaintiff immediately contacted his local plumber to assess the potential problem who referred Plaintiff to a sewage line specialist.

43.   That afternoon and through the following day, the sewage line specialist inspected Plaintiff's home and cleaned the "clean-out" trap located within Plaintiff's home.

44. However, Plaintiff was advised that the sewage line backup was not located within the portion of the sewage line within the home, but rather there was a problem with the sewage line outside the exterior of the home in between the home and the municipal sewage line.

45. In attempting to snake the outside line, the plumber noted that the exterior line was blocked and the soil around it had caved in indicating a pipe collapse/break.

46. Plaintiff paid the plumbing specialist $3,200.00 for the inspection work.

47. After the initial inspection and cleaning of the trap was performed, Plaintiff continued to suffer from the smell of sewage in his basement.

48. As such, on May 15, 2023, Plaintiff called AWR's call center and they provided him with claim number CLM771477 and indicated that a plumber would come to the property to review the matter.

49. The plumber came to the property on the afternoon of May 15, 2023.

50. As part of his inspection, the plumber inspected the trap within Plaintiff's home and then proceeded to "snake" the exterior portion of the sewage line.

12

51. After conducting some testing, Plaintiff observed that water had begun to pool on the outside of the property and that soil had sunken into the area where the sewage line was located.

52. The plumber then performed a video inspection of the sewage line, but intentionally set his camera distance to "one foot" as part of what Plaintiff would later learn was a deliberate effort by AWR to classify the location of the sewage problem to be within the residence so AWR could avoid its obligations under the Agreement.

53. On May 17, 2023, AWR advised Plaintiff to call the plumber to schedule the work to repair the sewage line.

54. After contacting the plumber, as advised by AWR, Plaintiff was told by AWR's plumber that his claim was being denied as any issue with the sewage line was located within the residential home and not covered under the Agreement.

55. Plaintiff then requested a letter of denial from AWR and, after initially telling Plaintiff that AWR does not issue denial letters, eventually told Plaintiff through AWR's online chat function that "Today the Camera Inspection (Joseph L Balkan) was under review, JOSEPH L BALKAN INC called advising that someone needs to reach out to you and advise you of coverage as current issue is not covered as it is internal you have a break on the sewer line inside of the basement from the trap. They are the experts if they say the problem is internal with the camera

13

evidence then your problem will not be covered even if you hire someone on your own they will not give you're a refund."

56.  After Plaintiff's repeated efforts to convince AWR to recognize their mistake and acknowledge that the sewage line backup was an exterior issue, on May 19, 2023, Plaintiff received a formal denial letter from AWR.

57.  Because AWR improperly denied Plaintiff's legitimate claim under the Agreement, Plaintiff had no choice but to fix his damaged sewage line at his own expense.

58.  Among other things, on May 19, 2023, Plaintiff's retained contractor took a video of the sewage line inside the house, which revealed that the interior portion of the line was not broken or plugged and that the issue was an outside broken and/or plugged line in the portion covered by the Agreement.

59.  On May 31, 2023, Plaintiff began repair of the sewage line, which was completed on June 1, 2023.

60.  The NYCDEP performed an inspection of the work and noted in its sign off reports that the repairs were made "from the main city sewer to the building."

61.  On  June 5, 2023, Plaintiff had the street repaved and patched the sidewalk.

62.  To date, Plaintiff has spent $26,130.00 to repair the exterior sewage line damage and will need to spend another

14

$5,500.00 to completely repair the sidewalk as the patch is only a temporary repair.

**D.   AWR's Pattern and Practice of Wrongly Denying Payment for Covered Repairs to Water and Sewer Lines**

63. Plaintiff is one of many line protection program participants whose repair claims were wrongly denied by AWR through deceptive reference to inapplicable or nonexistent exceptions to coverage, including asserting that the damage in the sewer line was within the home as opposed to the exterior portion of the sewer line.

64. For years, AWR's misleading practices have been the subject of homeowner complaints and news articles throughout the country.

65. For example, in one news article, a New Jersey participant in AWR's plan described how AWR refused to pay for a covered repair to a sewer line due to the dubious existence of a "belly" or dip in the line.[3] However, the Line Protection Agreement at issue did not exclude payment for repairs based on that reason. As outlined in consumer complaints on RipoffReport.com, AWR denied an Illinois consumer coverage for the same reason, telling the affected consumer that "a belly isn't a blockage so its [sic] not covered."[1]

---

[1] https://www.ripoffreport.com/reports/american-water-rescources/alton-illinois/american-water-rescources-insurance-for-\ our-water-and-sewer-lines-this-is-a-joke-the\_-d-437782.

66. In another news article, a New York line protection program participant from Whitestone, Queens described being denied a proper inspection and coverage of a break in her exterior sewer line after AWR determined that the break was the result of a preexisting problem. AWR made this determination even though it did not perform a camera inspection of the sewer line or inspect the lines prior to the homeowner entering the line protection program.[2]

67. Other participants in AWR's line protection programs have complained that AWR refused to repair breaks and other damage to water and sewer lines by citing non-existent or inapplicable exclusions. One participant stated: "The reasons we added this expense of $14 per month was to cover a catastrophic an [sic] expensive event as a break in the sewer line caused by tree roots and age. We had no idea this Insurance did not cover breakage of the sewer line going to the Main sewer in the street . . . . When I contacted [AWR] to tell them of the problem, they flatly told me they do not cover a break in the sewer line. On the bill I receive each month it clearly states water/sewer line protection. I am

---

[2] Insurance Refuses To Cover Sewer Line, *available at* http://queenstribune.com/insurance-refuses-to-cover-broken-sewer-line/.

16

scratching my head saying what the heck have I been paying for all this time?[3]"

68.   In fact, these types of complaints against AWR have continued to be asserted by customers through 2023, even asserting the AWR and the Agreements are nothing more than a scam.[4]

69.   The complaints coming from participants of AWR's line protection programs across the country show AWR's pervasive non-compliance with the terms and conditions of the Line Protection Agreements. Worse yet, AWR attempts to justify its contractual violations by falsely or misleadingly citing inapplicable, vague, or non-existent coverage exceptions. In some instances, AWR even denies coverage without properly inspecting water or sewer lines to determine the type or cause of the damage. Because AWR is often the exclusive provider of the line protection in the relevant areas, homeowners cannot seek protection from AWR's competitors and have no other recourse but to pay out-of-pocket for repairs.

70.   Based upon numerous complaints from AWR customers throughout the country, AWR (a) denies claims for the payment of covered repairs as a matter of course; (b) maintains internal

---

[3] https://www.ripoffreport.com/reports/american-water-resources/pittsbura-penns` lvania-15250/american-water-resources-amp-new- erse v- american-water-com pan N. -who- offers-thi s-insuranc-1107745.

[4] American Water Resources, LLC | Reviews | Better Business Bureau® Profile (bbb.org); American Water Resources, LLC | Complaints | Better Business Bureau® Profile (bbb.org); American Water Resources Reviews | Read Customer Service Reviews of awrusa.com (trustpilot.com); Ripoff Report | American Water Resources complaints, reviews, scams, lawsuits and frauds reported, 22 results

procedures aimed at deflecting its contractual obligations through reliance on vague, inapplicable, or non-existent exclusions to coverage; (c) fails to engage in the inspection and diligence required by the Line Protection Agreements, and (d) undertakes minimal and insufficient repairs even in instances where it has determined damage to exterior water and sewer lines is covered under the Agreements.

71. As a result of its misconduct, AWR has been able to increase its bottom line by collecting the costs paid by customers while wrongly withholding coverage to customers whose claims properly fall under the Line Protection Agreements. In the aggregate, AWR's customers have had to pay millions of dollars to participate in line protection programs and for repairs that should have been covered by AWR.

CLASS ACTION ALLEGATIONS

72. Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3).

73. The Class which Plaintiff seeks to represent (the "Nationwide Class") is defined as follows: All persons in the United States who entered into AWR line protection agreements and paid for such Agreements. "Persons" includes individuals, as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint

ventures, sole proprietorships, associations, firms, trusts, or other business or governmental agencies.

74.   The Sub-Classes which Plaintiff also seeks to represent are defined as follows:

THE "NATIONWIDE Out of Pocket Class"

All persons in the United States who entered into AWR line protection agreements who were denied payment for repairs to their water and sewer lines by AWR pursuant to the terms and conditions of the Line Protection Agreements during the applicable statute of limitations

The "New York Class"

All persons in the State of New York who entered into AWR line protection agreements who paid for an Agreement from AWR during the applicable statute of limitations.

The "New York Out of Pocket Class"

All persons in the State of New York who entered into AWR line protection agreements who were denied payment for repairs to their water and sewer lines by AWR pursuant to the terms and conditions of the Line Protection Agreements during the applicable statute of limitations.

The "New Jersey Class"

All persons in the State of New Jersey who entered into AWR line protection agreements who paid for an Agreement from AWR during the applicable statute of limitations.

The "New Jersey Out of Pocket Class"

All persons in the State of New Jersey who entered into AWR line protection agreements who were denied payment for repairs to their water and sewer lines by AWR pursuant to the terms and conditions of the Line Protection Agreements during the applicable statute of limitations.

19

75. Excluded from the "Class" are: (i) Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, predecessors, successors and assigns; (ii) Defendants' employees, officers, directors, agents, and representatives and their family members; (iii) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family; (iv) any person who has an action for damages for personal injury or death or property damage against Defendants.

76. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal the Class should be expanded or otherwise modified.

77. This action has been brought and may properly be maintained as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3), because there is a well-defined community of interest in the litigation in which common issues predominate and the proposed class is easily ascertainable:

a.    <u>Numerosity</u>.  AWR entered into AWR line protection agreements with customers across the United States. Plaintiff is informed and believes that the proposed putative Class is made-up of at least several thousand AWR customers.

b.    <u>Common Issues Predominate</u>.  Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class.

20

The terms of the AWR line protection agreements are virtually all the same and do not differ in any manner that is relevant to Plaintiff's allegations, and the damage and harm caused thereby. There is a well-defined community of interest in the questions of law and fact involved and that affect AWR consumers who entered into AWR line protection agreements.  These questions of law and fact predominate over questions that affect only individual class members.

The common questions of law and fact include, without limitation:

 i. Whether AWR designed and implemented practices and procedures intended to (i) deny claims for the payment of covered repairs as a matter of course; (ii) deflect its contractual violations through reliance on vague, inapplicable, or non-existent exclusions to coverage; (iii) avoid or minimize the inspection and diligence required by the Agreements, and (iv) impose minimal and insufficient repairs even in instances where AWR has determined damage to exterior water and sewer lines is covered under the Agreements;

 ii. Whether AWR violated the express terms of the Agreements by improperly denying payment for repairs of exterior water and sewer resulting from "normal wear and usage;"

 iii. Whether AWR violated the express terms of the Agreements by improperly categorizing a line backup as resulting from an interior defect as opposed to an exterior defect that would be covered under the Agreement;

 iv. Whether AWR violated the NJCFA through misleading solicitations sent, ratified, or drafted by AWR and/or by implementing a pattern and practice of

21

delaying or denying coverage under the Line Protection Agreements;

v.   Whether AWR violated NYGBL § 349 through misleading solicitations sent, ratified, or drafted by AWR and/or by implementing a pattern and practice of delaying or denying coverage under the Line Protection Agreements; and

vi.  Whether Plaintiff and the Class are entitled to permanent injunctive relief, and other damages caused by AWR's impermissible practices.

These questions of law and fact predominate over questions that affect only individual Class members and there is a well-defined community of interest in the questions of law and fact involved and that affect the Class.

c.   Typicality. Plaintiff's claims are typical of the claims of the Class members in that Plaintiff and the Class members have entered into the same AWR line protection agreements about which Defendants repeatedly made the same uniform misrepresentations of fact and material omissions. Therefore, the claims of Plaintiff are and will be typical of Class members.

d.   The Class is Ascertainable. Plaintiff has adequately and objectively defined the Class, as detailed above, so the Court and Class members will be able to use the definition to determine Class membership.

e.   Adequacy. Plaintiff will fairly and adequately represent the interests of all Class members. Plaintiff has entered into a AWR line protection agreement and suffered injury by virtue

22

of AWR failing and refusing to repair Plaintiff's exterior sewage line damage. Plaintiff is an adequate representative of the Class as he has no interests which are adverse to the interests of absent Class members.  Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class action litigation.

f. <u>Superiority</u>. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds of separate lawsuits. Furthermore, given the extraordinary expenses and burden in conducting the discovery, retention and analysis by specialized experts and presentation of evidence, the burden of individual litigation would make it extremely difficult, if not impossible for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action.  Moreover, separate

prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendants and result in the impairment of, and potential harm to, Class members' rights and the disposition of their interests through actions to which they were not parties.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

<u>FIRST CAUSE OF ACTION</u>

(BREACH OF CONTRACT)

78.  Plaintiff re-alleges and incorporates the allegations made elsewhere in the complaint as if set forth fully herein.

79.  Plaintiff brings this claim on behalf of himself and on behalf of the Class and Subclasses.

80.  The Agreements are valid, enforceable contracts between Plaintiff and other class members and AWR.

81.  Plaintiff and the other class members have performed all their obligations under the terms and conditions of the Line Protection Agreements, including but not limited to paying all fees to AWR required under the Agreements.

82.  At all relevant times, Plaintiff and other class members owned and occupied their homes and had ownership responsibility over their exterior water and sewer lines.

83.    As alleged above, AWR owed duties and obligations to Plaintiff and the other class members pursuant to the terms and conditions of the Line Protection Agreements, including dispatching independent contractors and paying for repairs to exterior water and sewer lines resulting from "normal wear and usage." AWR violated those duties and obligations by accepting payment from Plaintiff and the class members while knowing they would take every step possible to improperly deny coverage under the Agreements.

84.    AWR's conduct and material breaches of the Agreements have proximately caused damage to Plaintiff and other class members in an amount to be determined at trial. At a minimum, Plaintiff and other class members are entitled to the return of the money they paid to participate in line protection programs and money paid out-of-pocket for repairs to exterior water and sewer lines that should have been covered by the Line Agreements.

85.    In addition, unless AWR is permanently enjoined from continuing its improper and unlawful practices, Plaintiff and other class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## SECOND CAUSE OF ACTION

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

86.    Plaintiff re-alleges and incorporates the allegations made elsewhere in the complaint as if set forth fully herein.

25

87.    Plaintiff brings this claim on behalf of himself and on behalf of the Class and Subclasses.

88.    The Agreements are valid, enforceable contracts between Plaintiff and other class members and AWR.

89.    Each Agreement contains a covenant of good faith and fair dealing in which AWR owes Plaintiff and the other class members a duty to act in good faith and in a manner that did not frustrate their reasonable expectations.

90.    AWR violated those duties and obligations by accepting payment from Plaintiff and the class members while knowing they would take every step possible to improperly deny coverage under the Agreements.

91.    AWR's breach of the implied covenant of good faith and fair dealing has proximately caused damage to Plaintiff and other class members in an amount to be determined at trial. At a minimum, Plaintiff and other class members are entitled to the return of the money they forfeited to participate in line protection programs and money paid out-of-pocket for repairs to exterior water and sewer lines that should have been covered under the Line Agreements.

92.    In addition, unless AWR is permanently enjoined from continuing their improper and unlawful practices, Plaintiff and other class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

26

## THIRD CAUSE OF ACTION

**(Violations of the New Jersey Consumer Fraud Act)**

93.   Plaintiff re-alleges and incorporates the allegations made elsewhere in the complaint as if set forth fully herein.

94.   Plaintiff brings this claim on behalf of himself and on behalf of the Class and Subclasses.

95.   AWR engaged in unconscionable and deceptive or misleading commercial practices while advertising and providing line protection services to Plaintiff and other class members. AWR's promotional materials promised potential participants in the Line Protection Program that they would receive: (1) protection for covered water and sewer line repairs caused by normal wear and usage; (2) attention to customer service; (3) rapid response in emergencies; (4) a 1-year warranty on all repairs; and (5) "peace of mind protection from unexpected repairs."

96.   Instead, it was AWR's pattern and practice to minimize or avoid investigating claims and paying for covered repairs under the Agreements. Moreover, AWR avoided its contractual obligations by referencing inapplicable, vague, or non-existent exclusions or purposefully instructing its retained professionals to characterize the nature of the customer's sewage or water line defect to fit within one of the Agreement's exclusions even where

27

such characterization was diametrically opposite to the undisputed facts.

97. AWR intended that Plaintiffs and the other members of the Subclasses would rely upon its acts of concealment and/or omission by purchasing the Line Protection Plan.

98. AWR's conduct was objectively deceptive and had the capacity to deceive and defraud reasonable consumers under the circumstances. The fact that AWR knew about and failed to disclose that it would deny coverage and fail to provide the agreed upon services was a material fact that a reasonable and/or unsophisticated consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumer's choice of action during the purchase of the Line Protection Program.

99. Such practices contravene the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

100. As a direct and proximate result of AWR's violations of the NJCFA, Plaintiff and the other members of the Subclasses have suffered ascertainable losses, which include but are not limited to, the price paid for the Line Protection Agreement, the monies they were forced to expend – and will have to expend in the future – to repair and/or replace their sewer line, and the failure to receive the benefit of their purchase of the Line Protection Agreement, and accordingly were harmed by AWR's actions in violation of the NJCFA.

28

## FOURTH CAUSE OF ACTION

### (Violation of the New York General Business Law §349)

101. Plaintiff re-alleges and incorporates the allegations made elsewhere in the complaint as if set forth fully herein.

102. Plaintiff brings this claim on behalf of himself and on behalf of the Class and Subclasses.

103. NYGBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law § 349. The New York Court of Appeals has indicated that the statute should be liberally construed to provide "needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State." Karlin v. IVF America, Inc., 690 N.Y.S.2d 495, 498 (N.Y. 1999).

104. A violation of NYGBL § 349 occurs where: (1) the challenged transaction was "consumer-oriented;" (2) a defendant engaged in deceptive or materially misleading acts or practices likely to deceive a reasonable consumer acting reasonably under the circumstances; and (3) the plaintiff was injured by reason of the defendant's deceptive or misleading conduct.

105. As alleged herein, beginning in 2013, AWR directly marketed and invited consumers such as Plaintiff to sign up for the Line Protection Program through promotional materials that

29

were provided to Plaintiff and the class with the water and sewer line bills.

106. AWR engaged in unconscionable and deceptive or misleading commercial practices while advertising and providing line protection services to Plaintiff and other class members. AWR's promotional materials promised potential participants in the Line Protection Program that they would receive: (1) protection for covered water and sewer line repairs caused by normal wear and usage; (2) attention to customer service; (3) rapid response in emergencies; (4) a 1-year warranty on all repairs; and (5) "peace of mind protection from unexpected repairs."

107. Instead, it was AWR's pattern and practice to minimize or avoid investigating claims and paying for covered repairs under the Agreements. Moreover, AWR avoided its contractual obligations by referencing inapplicable, vague, or non-existent exclusions or purposefully instructing its retained professionals to characterize the nature of the customer's sewage or water line defect to fit within one of the Agreement's exclusions even where such characterization was diametrically opposite to the undisputed facts evidencing the damaged line.

108. Thus, under NYGBL § 349(h), Plaintiff is entitled to recover his actual damages or fifty dollars, whichever is greater, along with reasonable attorneys' fees.

30

109. In addition, unless AWR is permanently enjoined from continuing their improper and unlawful practices, Plaintiff and other class members will suffer severe and irreparable injuries for which they have no adequate remedy at law.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

110. Plaintiff repeats and re-alleges all prior paragraphs and incorporate them as if fully set forth herein.

111. Defendants were enriched by their deceptive acts.

112. The enrichment was at the expense of Plaintiff and the Class and Sub-Class.

113. The circumstances are such that equity and good conscience requires that Defendants make restitution.

114. Defendants have failed to make restitution.

115. As a result, Plaintiff and the Class and Sub-Class have been damaged.

## SIXTH CAUSE OF ACTION

### (Violation of Various Other States Consumer Protection Laws)

116. Plaintiff repeats and re-alleges all prior paragraphs and incorporate them as if fully set forth herein.

117. Defendants had a statutory duty to refrain from unfair and deceptive trade acts or practices in its provision of services to Plaintiff.

118. The actions and failures to act of Defendants constitutes acts, uses or employment by defendants of unconscionable and/or unfair practices, deception, fraud, false pretenses, false promises, misrepresentations, or the concealment, suppression, or omission of material fact in connection with its advertisement about and implementation of the Line Protection Program agreements entered into by the Plaintiff, the Putative Class and Sub-class within the meaning of various state consumer protection acts.

119. Defendants had a statutory duty to refrain from unfair and/or deceptive trade acts or practices in how they advertised and implemented the Line Protection Program agreements entered into by Plaintiff and Putative Class.

120. The violations of the various state consumer protection acts - Alabama: the Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1 et seq.); Alaska: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 et. seq.); Arizona: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 eq. seq.); Arkansas: the Arkansas Deceptive Trade Practices Act. (Ark. Code Ann. §4-88-101 et. seq.); California: (Cal. Civ. Code §1750, seq.; Cal. Bus. & Prof. Code. §17200 et seq.); Colorado: the Colorado Consumer Protection Act. (Colo. Rec. Stat. §6-1-101 et seq.); Connecticut: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a et seq.); Washington,

D.C.: the Consumer Protection Procedures Act. (D.C. Code Ann. §28-3901 et seq.); Florida: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201 et. seq. (West)) and the Florida False Advertising Statutes (Fla. Stat. Ann. §817.40 et seq. (West)); Georgia: Uniform Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370 et seq.); the Fair Business Practices Act (Ga. Code Ann. §10-1-1420 et seq.); Hawaii: The Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §481A et seq.) and Uniform Deceptive Trade Practices Act (Hawaii Rev. Stat. §481A et. seq.); Idaho: the Idaho Consumer Protection Act (Idaho Code §48-601 et seq); Illinois: the Uniform Deceptive Trade Practices Act (815 ILCS §§510/1 et seq.) and Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILC §505 et seq.); Indiana: the Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1 et seq. (Burns)); Iowa: the Iowa Consumer Fraud Act (Iowa Code Ann. §714.16 (West)); Kansas: the Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623 et seq.); Kentucky: the Consumer Protection Act (Ky. Rev. Stat. §367.110 et seq.); Louisiana: the Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §51:1401 (West)); Maine: the Maine Unfair Trade Practices Act (Me. Rev. Stat. Tit. 5 §206 et seq.) and the Uniform Deceptive Trade Practices Act (Md. Com. Law Ann. §§13-101 et seq., 14-101 et seq.); Massachusetts: the Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A); Michigan: the Michigan Consumer Protection Act (Mich. Comp. Laws

Ann. §445.901 et seq.) and the Michigan Pricing and Advertising Act (Mich. Comp. Laws. Ann. §445.351 et seq.); Minnesota: the Consumer Fraud Act. (Minn. Stat. Ann. §325 F. 69); the False Statement in Advertisement Statute (Minn. Stat. Ann. §325 F. 67); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §325D.44); and the Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13); Mississippi: the Consumer Protection Act (Miss. Code Ann. §75-24-1 et seq) and the False Advertising Statutes (Miss. Code Ann. §97-23-3); Missouri: the Missouri Merchandising Practices Act (Mo. Rev. Stat. §407.010 et seq.); Montana: the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §30-14-01 et seq.) and the Statutory Deceit Statute (Mont. Code Ann. §27-1-712); Nebraska: the Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601 et seq.) and the Nebraska Uniform Deceptive Trade Practices Act. (Neb. Rev. Stat. §87-301 et seq.); Nevada: the Deceptive Trade Statues (Nev. Rev. Stat. §§598.0903 et seq., 41.600 et seq.) New Hampshire: the Regulation of Business Practices for Consumer Protection (N.H. Rev. Stat. Ann. §358-A:1 et seq.) New Mexico: New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 et seq.); New York: New York Consumer Protection Act (N.U. Gen. Bus. Law. §§349, 350 (Consol.)); North Carolina: North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 et seq.); North Dakota: Deceptive Act or Practices Statutes (N.D. Gen. Stat. §51-15-01 et seq.); Ohio: Ohio

34

Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 et seq. (Baldwin)); Oklahoma: Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 et seq. (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 et seq. (West)); Oregon: the Unlawful Trade Practices Act (Or. Rev. Stat. §616.005 et seq.); Pennsylvania: Unfair Trade Practices Act and Consumer Law (Pa. Stat. Ann. Tit. 73 §201-1 et seq. (Purdon)); Rhode Island: Consumer Protection Act (R.I. Gen. Law §6-13.1-1 et seq.); South Carolina: South Carolina Unfair Trade Practices Act (S.C. Code Ann. §39-5-10 et seq.); South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 et seq.); Tennessee: Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101 et seq.); Texas: Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. §17.41 et seq. (Vernon)); Utah: Utah Consumer Sales Practices act (Utah Code Ann. §13-11a-1 et seq.): Vermont: Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 et. seq.); Virginia: Virginia Consumer Protection Act (Va. Code 59.1-196 et seq.); Washington: Washington Consumer Protection Act (Wash. Rec. Code Ann. §19.86 et seq.) West Virginia: West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 et seq.) Wisconsin: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 et seq. (West)); Wyoming: Consumer Protection Act (Wyo. Stat. §40-12-101 et seq.); have directly, foreseeably and

35

proximately caused damages to Plaintiff and the Putative Class and Sub-class in amounts yet to be determined.

121. Defendant's actions are outrageous due to their reckless indifference to the rights of Plaintiff and the Putative Class and Sub-class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class request that the Court issue an Order and grant Judgment to the Class Plaintiffs as follows:

A.   An order certifying this action as a Class Action, appointing Juan Salazar as representative Plaintiff, and appointing his counsel to be counsel for the Class and the Sub-Classes;

B.   A constructive trust on and restitution of all amounts obtained by Defendants as a result of its violation of the statutory claims plead above, and the Defendants' misconduct, together with interest thereon from the date of payment, to the victims of such violations;

C.   All recoverable compensatory, punitive, and other damages sustained by Plaintiff and Class and Sub-Class members;

D.   Restitution and disgorgement of all amounts obtained by AWR as a result of its misconduct, together with

36

interest thereon, from the date of payment, to the victims of such violations;

E. Actual, treble, and/or statutory damages for injuries suffered by Plaintiff and the other members of the Nationwide Class and Subclasses in the maximum amount permitted by applicable law;

F. An injunction (1) enjoining Defendants' wrongful, unlawful, fraudulent, deceptive, and unfair conduct as set forth above; (2) directing Defendant to engage in a corrective notice campaign; and (3) directing Defendant to refund to Plaintiff and Class Members all yearly fees paid to AWR and all amounts any member of the class paid for repairs that AWR refused to cover;

G. Statutory pre-judgment and post-judgment interest on any amounts;

H. Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

I. Such other relief as the Court may deem just and proper.

[*Remainder of Page Intentionally Blank*]

37

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

NAGEL RICE, LLP

Dated:  August 9, 2023          s/ *Bruce H. Nagel*_____
                                **Bruce H. Nagel**
                                **Randee M. Matloff**
                                **Bradley L. Rice**
                                **103 Eisenhower Parkway**
                                **Roseland, NJ 07068**
                                **Bnagel@nagelrice.com**
                                **rmatloff@nagelrice.com**
                                **brice@nagelrice.com**
                                **(973) 618-0400**
                                **Attorneys for Plaintiff**

38